181 P.3d 468

**STATE of Idaho, Plaintiff–Respondent,**

v.

**James H. KIMBALL, Jr., Defendant–Appellant.**

No. 33673.

Supreme Court of Idaho,
Boise, February 2008 Term.

March 28, 2008.

old student who he met through his work as a school bus driver. Kimball had known the student, P.H., for approximately two years before their relationship developed into a sexual one. P.H.'s parents discovered the relationship when they found suggestive notes in her bedroom trash can. The notes detailed an escalating flirtation between Kimball and P.H. Eventually, the flirtation culminated in a single sexual encounter between the two around October 3, 1991. The encounter appeared to be consensual and likely would not have been discovered if P.H.'s parents had not found the notes.

Kimball pleaded guilty to one count of statutory rape in 1992. The sentencing judge imposed a withheld judgment with three years of probation, a lenient sentence likely induced by Kimball's favorable character references. The psychologist assigned to his case at the time stated Kimball "[a]ppeared to fully understand his responsibility for what he did and the mistakes he made." The psychologist indicated Kimball did not need further psychological intervention. Kimball completed his probation in 1995 and filed a motion to dismiss the charge, which the district court granted. Since then, Kimball has by all accounts led an upstanding life. The statutory rape charge constitutes his entire criminal record. He married his long-time girlfriend (who he was seeing at the time of the statutory rape) in 1995, and the couple has two young daughters. Kimball has remained gainfully employed from the time of his conviction in 1992.

In 2006, Kimball filed a show cause petition to be removed from the Sex Offender Registry. The petition included a report from a psychosexual evaluator stating that Kimball "should be considered a very low risk to sexually recidivate." The evaluator stated three recommendations/considerations:

1. James Kimball is not considered to be in need of specialized sexual offender treatment and has completed such in the past. Currently available data do not indicate him as displaying problems with sexually deviant interests or deviant patterns of sexual arousal;

John Meienhofer, Boise, for appellant.

The Honorable Lawrence G. Wasden, Attorney General, Boise, for respondent. Thomas Tharp argued.

J. JONES, Justice.

James Kimball pleaded guilty to statutory rape in 1992. As a result, he was required to register as a sex offender under Idaho's Sexual Offender Registration, Notification, and Community Right–to–Know Act, I.C. §§ 18–8301, et seq. (Registration Act). In 2006, Kimball petitioned to have his name removed from the Sex Offender Registry pursuant to I.C. § 18–8310, contending he was not a risk to reoffend. The district court denied the motion. Kimball appealed. We vacate and remand for further proceedings consistent with this opinion.

## I.

In 1991, James Kimball, then 23 years old, committed statutory rape with a fifteen-year-

2. Mr. Kimball is viewed as being in a very low risk category for sexual recidivism relative to other adult male sexual offenders; and,

3. He does not appear to pose an unacceptable level of risk to an unsuspecting public.

Despite the State's objection, the district court conducted a hearing on Kimball's show cause petition. At the hearing, the court stated on the record, "I'm satisfied based upon the evidence before me that you represent virtually no risk of reoffense. The problem is that your burden is to show that you do not represent any risk of reoffense." The court felt constrained to deny Kimball's petition, based upon the Court of Appeals' interpretation of the language of I.C. § 18–8310 in *State v. Knapp*, 139 Idaho 381, 79 P.3d 740 (Ct.App.2003) and the failure of the psychosexual evaluation to say that Kimball posed "no risk" of reoffending. The court noted that, while the evaluator said Kimball posed very little risk to sexually recidivate, he did not say there was no risk. Kimball appealed to this Court.

## II.

We are presented with two questions: (1) whether "not a risk to commit a new violation" under I.C. § 18–8310(1)(a) is properly interpreted as meaning absolutely no risk and (2) whether the court may take into consideration evidence other than the opinion of a psychosexual evaluator in making the risk determination.

## A.

■ The interpretation of a statute is a question of law over which this Court exercises free review. *State v. Robinson*, 143 Idaho 306, 307, 142 P.3d 729, 730 (2006). When interpreting a statute, "the court's only concern is to ascertain and give effect to the legislative intent as expressed, irrespec-

tive of the wisdom, practicability, policy, expediency or possible results." *State v. Bever*, 118 Idaho 80, 81, 794 P.2d 1136, 1137 (1990) (quoting *State v. Bunting Tractor Co.*, 58 Idaho 617, 623, 77 P.2d 464, 466 (1938)). If the statutory language is unambiguous, " 'the clearly expressed intent of the legislative body must be given effect, and there is no occasion for a court to consider rules of statutory construction.' " *Garza v. State*, 139 Idaho 533, 536, 82 P.3d 445, 448 (2003) (quoting *Payette River Property Owners Ass'n v. Board of Comm'rs of Valley County*, 132 Idaho 551, 557, 976 P.2d 477, 483 (1999)). The plain meaning of a statute therefore will prevail unless clearly expressed legislative intent is contrary or unless the plain meaning leads to absurd results. *Garza*, 139 Idaho at 536, 82 P.3d at 448. Where the statute is ambiguous, we attempt to ascertain legislative intent, and in construing the statute we may examine the language used, the reasonableness of the proposed interpretations, and the policy behind the statute. *Id.*

## B.

■ Kimball argues that the Court of Appeals erred in *State v. Knapp* by equating "not a risk" with "no risk." He argues, further, that the district court erred by basing its determination solely upon the report of the psychosexual evaluator and in not making an independent review of all evidence in the record. The State argued that Kimball failed to present clear and convincing evidence that he was not a risk to reoffend, thus failing to meet the requirements of I.C. § 18–8310.

■ Proceedings under the Registration Act are civil in nature. *State v. Gragg*, 143 Idaho 74, 76–77, 137 P.3d 461, 463–64 (Ct. App.2005). I.C. § 18–8310 is the sole mechanism by which a person may be released from the sex offender registration requirements.[1] *Robinson*, 143 Idaho at 310, 142

1. § 18–8310. Release from registration requirements—Expungement

(1) Any person, other than a recidivist, an offender who has been convicted of an aggravated offense, or an offender designated as a violent sexual predator, may, after a period of ten (10) years from the date the person was released from

incarceration or placed on parole, supervised release or probation, whichever is greater, petition the district court for a show cause hearing to determine whether the person shall be exempted from the duty to register as a sexual offender. In the petition the petitioner shall:

P.3d at 733. In *State v. Knapp*, the Court of Appeals stated that I.C. § 18–8310 "requires the district court to find by 'clear and convincing' evidence that the petitioner be 'not a risk to commit a new violation,' before releasing that petitioner from the registration requirement." 139 Idaho at 382, 79 P.3d at 741.

Knapp, a high school science teacher, was charged with sexually abusing a fourteen-year-old student in 1991. *Id.* at 381, 79 P.3d at 740. In contrast to the case at bar, where only a single sexual encounter took place, Knapp apparently "groomed" the student for a number of years. *Id.* at 383, 79 P.3d at 742. The abuse progressed from hugging and kissing on the mouth to fondling the victim's breasts underneath her clothing at school. *Id.* Knapp entered an *Alford* plea and received a withheld judgment and probation for five years. *Id.* at 381, 79 P.3d at 740. Eleven years after his plea, Knapp filed a petition under I.C. §§ 19–2604 and 18–8310 to have his guilty plea set aside, to have his case dismissed, and to be released from the sex offender registration requirement. *Id.* He supported his petition with several polygraph tests indicating he had not reoffended and with evidence that he completed the Sexual Abuse Now Ended (SANE) Program. *Id.* at 381–82, 79 P.3d at 740–41. The director of the Idaho SANE program testified that Knapp was a low risk to reoffend. *Id.* at 382, 79 P.3d at 741. However, she refused to say there was "no chance" that he would reoffend. *Id.* She testified, "No, I can't say

that with absolute certainty. I don't believe in that." *Id.* Ultimately, the district court set aside Knapp's plea and dismissed the case but did not release him from the registration requirement. *Id.* Knapp appealed the case, arguing to the Court of Appeals that the district court's restrictive interpretation of I.C. § 18–8310 "render[ed] the statute meaningless." *Id.* The Court of Appeals disagreed, upholding the district court. *Id.* at 384, 79 P.3d at 743.

The Court of Appeals discussed at length the language and policy of I.C. § 18–8310, stating that its duty was to give effect to the "clearly expressed legislative intent." *Id.* at 382, 79 P.3d at 741. The court said the language of the statute could "be no more explicit" and that it required offenders to prove they were at "no risk" to reoffend. *Id.* The court cited examples to show the "legislatively enacted standard is not impossible to meet." *Id.* at 383, 79 P.3d at 742. An offender could prove he was not a risk to reoffend, for example, where he was convicted of statutory rape for having consensual intercourse when he was nineteen years old with his sixteen-year-old girlfriend, whom he subsequently married;[2] where the "victim has recanted; or where advanced age or medical or physical condition establish that the defendant is 'not a risk' to re-offend." *Id.* at 382–83, 79 P.3d at 741–42. This somewhat restrictive interpretation of I.C. § 18–8310 goes beyond the language of the statute,

(a) Provide clear and convincing evidence that the petitioner is not a risk to commit a new violation for any violent crime or crime identified in section 18–8304, Idaho Code;
(b) Provide an affidavit indicating that the petitioner does not have a criminal charge pending nor is the petitioner knowingly under criminal investigation for any violent crime or crime identified in section 18–8304, Idaho Code;
(c) Provide proof of service of such petition upon the county prosecuting attorney for the county in which the application is made; and
(d) Provide a certified copy of the judgment of conviction which caused the petitioner to report as a sexual offender.
The district court may grant a hearing if it finds that the petition is sufficient. The court shall provide at least sixty (60) days' prior notice of the hearing to the petitioner and the county prosecuting attorney.

The court may exempt the petitioner from the reporting requirement only after a hearing on the petition in open court and only upon proof by clear and convincing evidence that the petitioner is not a risk to commit a new violation for any violent crime or crime identified in section 18–8304, Idaho Code.
(2) Concurrent with the entry of any order exempting the petitioner from the reporting requirement, the court may further order that any information regarding the petitioner be expunged from the central registry.

2. This victim-specific example does not necessarily withstand careful scrutiny. Just because an offender marries the victim does not mean that he may not have sexual proclivities that bring him to prey upon other young victims. Each case must be examined on its individual merits.

and we use this opportunity to clarify the application of the statute.

■ The language of I.C. § 18–8310 requires the offender to provide clear and convincing evidence that he is "not a risk" to reoffend, not that he poses *no* risk. "Clear and convincing evidence is generally understood to be '[e]vidence indicating that the thing to be proved is highly probable or reasonably certain.' " *In re Adoption of Doe,* 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006) (quoting *Black's Law Dictionary* 577 (7th ed.1999)). Thus, by the plain language of the statute, Kimball needed only to prove that it was highly probable or reasonably certain he was "not a risk" to reoffend. In reaching this conclusion, we are not unmindful of the strict policy behind the Registration Act. *See, e.g., Ray v. State,* 133 Idaho 96, 101, 982 P.2d 931, 936 (1999) (the Registration Act "provides an essential regulatory purpose that assists law enforcement and parents in protecting children and communities."). However, the legislature also created a mechanism to be released from these requirements in I.C. § 18–8310. This mechanism is strict and presents a very high hurdle for offenders. *See, e.g., Robinson,* 143 Idaho at 308, 142 P.3d at 731 ("Our legislature, aware of the risks sexual offenders pose to Idaho communities and the difficulties faced by law enforcement officers when protecting our communities and conducting investigations ... provided the mechanism by which a person may be released from the requirements of the registration act."); *Knapp,* 139 Idaho at 383, 79 P.3d at 742 ("the legislature has embraced a successively more restrictive approach to releasing offenders from the registration requirement.").

However, the Legislature worded I.C. § 18–8310 in such fashion as to allow some exercise of discretion by the judiciary, first, by using the language "not a risk" instead of "no risk" and, second, by providing that an offender establish he was not a risk by clear and convincing evidence, rather than requiring a showing beyond a reasonable doubt. While we do not opine on the sufficiency of the showing here, where a person establishes that he poses "virtually no risk" of reoffense, it may well be that he has cleared the hurdle.

However, we leave that for the district court to determine upon remand.

■ In this case, the district court appeared to feel constrained by the determination that the psychosexual evaluator made in Kimball's case—that Kimball was a "very low risk" to reoffend. The district court acknowledged Kimball represented "virtually no risk of offense," but indicated that this did not appear to satisfy the certainty demanded by the Registration Act. It does not appear the court considered any other evidence, such as the particular facts relating to Kimball's offense or the testimony given by Kimball at the hearing. The district court's sole reliance on the psychosexual evaluation was misplaced. An evaluator's professional conclusion does not mandate the district court to make the legal conclusion that Kimball failed to present clear and convincing evidence he was "not a risk" to reoffend. This is especially true where a psychosexual evaluator "shall not" state a person presents no risk. Rule 4 of the Idaho Sexual Offender Classification Board incorporates a number of publications by the Association for the Treatment of Sexual Abusers (ATSA) for use by certified psychosexual evaluators. IDAPA 57.01.01.004. Included in the incorporated publications are the ATSA Practice Standards and Guidelines for the Evaluation, Treatment and Management of Adult Male Sexual Abusers. IDAPA 57.01.01.004.02. Paragraph 24 of the 2003 Practice Standards states, "Members *shall not* make statements that a client is 'cured' or no longer at any risk to re-offend." Thus, a psychosexual evaluator could not ethically state that Kimball is "no risk" or "not any risk" to reoffend.

In this case, the district court should have considered all the evidence presented by Kimball, not just the psychosexual evaluation. Kimball took the stand and testified that he felt he posed no risk of having sex with a minor female. Further, he testified he had not had sexual contact with anyone except his wife in the entire intervening years between his plea and this petition and that he did not intend to have sexual contact with anyone besides his wife in the future. He testified that he had not committed any crimes and that he held a steady job. He

also testified that the psychosexual evaluator told him the lowest rating he could ever receive was "low." The court also had before it the facts pertaining to Kimball's offense and some of his history following the conviction. The district court was required to consider this evidence as well as the psychosexual evaluation.

In sum, I.C. § 18–8310 requires the district court to make an independent evaluation of whether the petitioner presented clear and convincing evidence that he is "not a risk" to reoffend. This is a legal conclusion, in which a psychosexual evaluator's opinion plays an important, but not exclusive, part. By the language of the statute, the district court is not permitted to hold a show cause hearing unless the petitioner has established in his petition by clear and convincing evidence that he is not a risk to reoffend. I.C. § 18–8310(1). Only upon a sufficient showing may the court grant a hearing on the matter. As such, the district court found Kimball presented sufficient evidence in the petition to show he was not a risk. A person may only be released from the registration requirement, however, after a hearing in open court on the matter in which "proof by clear and convincing evidence that the petitioner is not a risk" is presented. In this case, Kimball presented his own testimony and the psychosexual evaluation. The State offered no evidence in rebuttal.[3] At that point, the court was required to make a determination of whether Kimball had proven it was "highly probable" or "reasonably certain" that he would not reoffend. The court did not do so, focusing solely on the psychosexual evaluator's conclusion, considered in light of the *Knapp* court's restrictive interpretation of I.C. § 18–8301. The district court erred in so doing.

### III.

We vacate the district court's order and remand this case to provide Kimball with an opportunity to present clear and convincing evidence that he is not a risk to reoffend.

---

**3.** In a case where the State has concerns that a petitioner might pose a risk of reoffending, the

Chief Justice EISMANN, Justices BURDICK and W. JONES and Pro Tem. TROUT concur.

presentation of rebuttal evidence would certainly heighten the bar for the offender.